UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>SUMONTINEE SRIDEJ<br>aka SUMONTHINEE WONGKAEW<br>aka SUMONTINEE HUGHES. | Case No. 2:22-mj-00792-EJY<br><br>**ORDER** |

Pending before the Court is the request by the United States of America (the "government") for an order certifying the extradition of Sumontinee Sridej aka Sumontinee Wongkaew, aka Sumontinee Hughes ("Ms. Sridej") to the Kingdom of Thailand ("Thailand"). The matter was addressed at a hearing on November 30, 2022, as well as through a pre-hearing brief filed by the government and post-hearing briefs filed by Ms. Sridej and the government. The Court has considered the certified and authenticated documents submitted by Thailand through diplomatic channels including, but not limited to: (1) the Request for the Extradition of Ms. Sridej submitted by Jumpon Phansumrit ("Jumpon"), Director General of the International Affairs Department, through designation by the Attorney General for the Central Authority of Thailand; (2) the Affidavit of Public Prosecutor Noppanut Julniti ("Julniti" or the "Julniti Affidavit" or "Julniti Aff."); and (3) the Affidavit of Nathanan Thanthada (the "Thanthada Affidavit"). The Court also considered the Declaration of Tom Heinemann ("Heinemann"), Attorney Advisor in the Office of the Legal Adviser, United States Department of State and the Declaration of Jamie Briggs ("Briggs"), Attorney Advisor for the United States Department of State in the Office of the Legal Adviser, Office of Law Enforcement and Intelligence, together with arguments and pleadings submitted by the parties. The Court finds as follows.

**I.     Brief Summary of Relevant Facts**

There is no dispute that Ms. Sridej is a citizen of Thailand who is charged with 36 counts of fraud under the Thai Penal Code. Gov't Ex. 2 (Request for Extradition by Jumpon) at 1. Ms. Sridej was the Assistant Director for Sales and Marketing for The Value Systems Company, Ltd. ("VSC" or the "Company"). VSC is an electronics wholesale company selling electronic products including

1

smart phones and tablets. *Id*. at 2. In January 2015, a VSC customer (Suchin Panich Limited Partnership, referred to herein as the "Partnership") informed the Company that it received "an account receivable confirmation letter" indicating the Partnership "purchased 533 smartphones" from VSC, which the Partnership had not purchased. *Id*. Jumpon explains in the Request for Extradition that prior to the Partnership receiving the accounts receivable letter, Ms. Sridej called the Partnership to warn the customer it would receive the letter, but that the letter was a mistake. *Id*. One day after these events, a VSC sales associate told the Company that an invoice sent to another customer, True Max Co., Ltd, had not been paid, but, importantly, True Max had not purchased any of the products listed on the invoice. *Id*. The sales associate who issued the invoice to True Max was under Ms. Sridej's supervision. *Id.*

Subsequently, VSC conducted an internal audit and learned that there were many invoices issued at Ms. Sridej's direction to customers who had not paid such invoices, the products on the invoices left the Company's inventory, and all the products at issue were delivered to non-customer and co-conspirator Pitak Punyasuk ("Pitak"). *Id*. *See also* Gov't Ex. 2 (Julniti Aff.) at 3. Pitak ran a retail electronics shop and told Thai investigators that Mrs. Pornpimon Sawaspadungkij ("Pornpimon"), who is another co-conspirator, arranged for these products to be delivered to Pitak at below wholesale prices. *Id*. VSC checked bank accounts and found there were money transfers and financial transactions between Ms. Sridej and Pornpimon. A sample of the money transfers are found at pages 4 and 5 of the Julniti Affidavit.

The Thai Public Prosecutor alleges that between approximately August of 2013 and January 2015, Ms. Sridej participated in the theft of electronic products worth over 123 million baht, which equates to approximately $4 million U.S. dollars. ECF Nos. 1 at 4-8, 19 at 3; *see also* Gov't Ex. 2 (Julniti Aff.) at 6-46. Ultimately, Ms. Sridej, along with co-conspirators Pitak and Pornpimon, who have been convicted, was charged with 36 counts of committing fraud. Gov't Ex. 2 (Request for Extradition) at 1, (Julniti Aff.) at 47.

There is no dispute that on January 5, 2015, Ms. Sridej landed in the U.S. and has remained in the country since that time. The government's brief states that the Thai government "waited to start extradition proceeding against … Ms. Sridej until this year[] despite knowing where … [she]

was." ECF No. 29 at 2. On February 3, 2015, a warrant for Ms. Sridej's arrest was issued by the Southern Bangkok Criminal Court. ECF No. 1 at 36, 42. On October 7, 2022, a sealed complaint and arrest warrant was issued against Ms. Sridej for fraud. ECF No. 4. Ms. Sridej was arrested on October 11, 2022, and subsequently detained pending extradition certification.

**II.     Discussion**

Extradition is primarily an executive branch responsibility that includes a limited defined role for the judicial officer from whom certification is sought. *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005). Under 18 U.S.C. § 3184, the judicial officer is authorized to certify to the Secretary of State that evidence submitted by the country seeking extradition is "sufficient to sustain the charge." If the judicial officer certifies the extradition, the Secretary of State decides whether the alleged fugitive is properly surrendered to the requesting country. *Id.*; *see also* 18 U.S.C. § 3186, *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (en banc).

When considering whether to certify the extradition of Ms. Sridej to the Secretary of State, the Court must find all of the following are true: (1) the exercise of jurisdiction over Ms. Sridej is proper; (2) the Court is authorized to conduct the extradition proceedings; (3) the applicable treaty is in full force and effect; (4) the crime with which Ms. Sridej is charged is covered by the treaty; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought. 18 U.S.C. § 3184; *Santos*, 830 F.3d at 991. As the Magistrate Judge to whom this is referred, the undersigned has no discretionary decision to make. *Prasoprat*, 421 F.3d at 1012 (internal citation omitted). If the elements of extradition are met, certification of extradition is required. *Id.* (internal citation omitted). Here, Ms. Sridej does not contest jurisdiction or this Court's authority to conduct the extradition proceedings. ECF No. 32 at 37. Thus, the Court starts its analysis with whether the treaty at issue is in full force and effect.

        A.    <u>The Treaty Between the United States and Thailand is Valid and In Force.</u>

The Court reviewed the Post Hearing Brief submitted on behalf of Ms. Sridej along with the exhibits attached thereto. In sum, Ms. Sridej contends that because Thailand has suffered political upheaval that includes abolishment and replacement of its constitution subsequent to the May 17, 1991 date on which the Extradition Treaty went into full force and effect (*see* ECF No. 32 at 32),

the Treaty was nullified. ECF No. 29 at 8. However, the Court has before it declarations from two attorney advisors to the U.S. Secretary of State. Albeit with a corrected typographical error, the Declaration of Tom Heinemann states: "The relevant and applicable treaty provisions in full force and effect between the United State and … [Thailand] are found in the Treaty Between the Government of the United States of America and the Government of the Kingdom of Thailand Relating to Extradition …." Gov't Ex. 3 ¶ 2. The Declaration of Jamie Briggs states: "The Extradition Treaty between the United States of American and the Kingdom of Thailand that was signed at Washington, on December 14, 1983, and entered into force on May 17, 1991 … is currently in force." ECF No. 33-1 ¶ 2. Briggs' Declaration goes on to state: "I have appended to this declaration the pertinent extract from the official Department of State publications *Treaties in Force*, which includes those treaties and other international agreements entered into by the United States, which, as of January 1, 2020, had not expired by their own terms, been denounced by the parties, replaced or superseded by other agreements, or otherwise definitely terminated." *Id*. After explaining that the U.S. is not a party to the Vienna Convention on the Law of Treaties, Briggs states the U.S. does describe "the Convention as providing an authoritative guide to international treaty law and practice, including generally on the validity and termination of treaties." *Id*. ¶ 4. Briggs further states the provisions in the Treaty that may effect a termination are inapplicable to the Treaty between the U.S. and Thailand Relating to Extradition and neither party to the Extradition Treaty has looked to such provisions to terminate the Treaty. *Id*. ¶ 5. "Moreover, nothing in the Convention or international law more generally provides that treaties terminate automatically upon changes of government, the outbreak of hostilities, or coups or internal unrest." *Id*. In sum, as explained by Briggs, "[t]he Extradition Treaty remains legally binding" on the U.S. and Thailand, which is further demonstrated by the fact that the U.S. extradited a fugitive to Thailand in 2017, and Thailand extradited two fugitives to the U.S. in 2022. *Id*. ¶¶ 7-8.

A "long judicial tradition [supports the] general judicial policy of deference to the executive in the area of foreign relations." *United States v. Fernandez-Pertierra*, 523 F.Supp. 1135, 1141-42 (S.D. Fla. 1981) (internal quote marks omitted) *citing Dames & Moore v. Regan*, 453 U.S. 654 (1981) and *Haig v. Agree*, 453 U.S. 280 (1981). This deference comes from the "generally accepted

view that foreign policy [is] the province and responsibility of the Executive" whose authority in foreign policy derives from Article II of the U.S. Constitution. *Dep't. of Navy v. Egan*, 484 U.S. 518, 529 (1988) *quoting Haig*, 453 U.S. at 293-94. Under Ninth Circuit precedent, judicial deference regarding foreign relations encompasses the State Department's determination that a treaty is in force. *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996) ("The continuing validity of [a treaty] presents a political question, and we must defer to the intentions of the State Departments of the two countries.") (internal citation omitted); *In Extradition of Camelo-Grillo*, Case No. CV 16-9026 JVS (SS), 2017 WL 2945715, at *5 (C.D. Cal. July 10, 2017) (finding "the State Department's determination of continuing validity of a treaty is entitled to deference."). *See also Arias Leiva v. Warden*, 928 F.3d 1281, 1289 (11th Cir. 2019) ("[W]e are deferring to the Executive's judgment on a *political issue*—that is, treaty recognition.") (emphasis in original).

Here, two State Department attorneys state, under oath, that the Extradition Treaty between the U.S. and Thailand is in fully force and effect. Gov't Ex. 3 ¶ 2; ECF No. 33-1 ¶¶ 2-5, 7-8. The Briggs Declaration supports that neither the U.S. nor Thailand has acted in a manner that suggests, let alone supports, the nullification of the Extradition Treaty. Indeed, recent history of extraditions between the countries evidences the opposite. ECF No. 33-1 ¶ 8. The State Department's view that the Extradition Treaty remains in force "is entitled to great weight and importance." *Sayne v. Shipley*, 418 F.2d 679, 684 (5th Cir. 1969). *See also Terlinden v. Ames*, 184 U.S. 270, 285 (1902) ("on the question of whether [an extradition] treaty has ever been terminated, governmental action in respect to it must be regarded as of controlling importance"). *See also Meza v. U.S. Attorney General*, 693 F.3d 1350, 1358 (11th Cir. 2012).

Thus, after considering the evidence before this Court, as well as substantial case law, the Court finds the Extradition Treaty between the U.S. and Thailand is in full force and effect and certification of Ms. Sridej's extradition would not be in violation of the provisions found in 18 U.S.C. § 3184.

B.  <u>The Crime with which Ms. Sridej is Charged are Extraditable Under the Treaty</u>.

The Court begins with the language of the Extradition Treaty itself. In the Letter of Submittal to the Department of State (the "Letter of Submittal") it states Article I of the Treaty "obligates each

State to extradite to the other … any persons charged with or convicted of an extraditable offense by the requesting State. … [F]urther[,] … extradition shall be granted when the offense for which extradition is requested was committed outside the requesting State if the laws of the requested State would provide for punishment of such an offense in comparable circumstances." ECF No. 1 at 19 (Sridej Ext. 007).  The Letter of Submittal states "the dual criminality standard should be interpreted liberally in order to effectuate the intent of the Parties that fugitive be brought to justice." *Id.*  Article 2 states "an offense shall be an extraditable offense … whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate the offense by the same terminology …." *Id*. at 23 (Sridej Ext. 11).  "[C]ourts must approach challenges to extradition with a view toward finding the offenses within the treaty." *Matter of Extradition of Valdez-Mainero*, 3 F.Supp.2d 1112, 11126 (S.D. Cal. 1998) (quoting *McElvy v. Civiletti*, 523 F.Supp. 42, 48 (S.D. Fla. 1981)).

In fact, case law clearly establishes that "each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States. It is enough that the conduct involved is criminal in both countries." *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986).  *See also Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404-05 (9th Cir. 1988) (the elements of the crime committed in a foreign country need not be identical to the elements of the substantially analogous crime in the U.S.  "It is enough that the conduct involved is criminal in both countries.") (citing *Russell*, 789 F.2d at 803) (stating that Hong Kong crimes of false accounting and publishing a false statement are substantially analogous to federal crimes of making a false entry in a bank statement); *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) ("[D]ifferences between statutes aimed at the same category of conduct do not defeat dual criminality."); *Emami, v. U.S. Dist. Court*, 834 F.2d 1444, 1450 (9th Cir. 1987) (stating that dual criminality is satisfied if the "substantive conduct each statute punishes is functionally identical"). That is, dual criminality exists if the "essential character" of the acts criminalized by the laws of each country are the same and the laws are "substantially analogous." *Oen Yin–Choy*, 858 F.2d at 1404 (internal quotations and citations omitted).  The name by which the crime is described and the scope of liability need not be the same. *Id.* (citing *Emami*, 834 F.2d at 1450).

As explained in *Emami*, as long as the fugitive's alleged conduct would be prosecutable under the laws of the U.S., dual criminality is satisfied even though the two relevant countries had differing definitions of fraud. *Emami*, 834 F.2d at 1449–50. *See also Matter of Extradition of Fordham*, 281 F.Supp.3d 789, 801 (D. Alaska 2017) (rejective the argument that "differences in *mens rea* requirements … defeat dual criminality"); *Spatola v. United States*, 741 F.Supp. 362, 372-73 (E.D.N.Y. 1990) *aff'd*, 925 F.2d 615, 618-19 (2nd Cir. 1991) ("without engaging in an unnecessary, comparative law, element-by-element statutory analysis … the acts for which Spatola was convicted [in Italy], and the actions of the group for which Spatola as co-conspirator was liable, are clearly illegal [in the U.S.]"); *Trifonov v. Fox*, Case No. C14-0366JLR, 2014 WL 3735419, at *14 (W.D. Wash. July 28, 2014) (discussing and rejecting the argument that the laws of the State of Washington were not substantially analogous to Bulgarian law because Washington law required "a greater mens rea than is required" by the Bulgarian statute at issue); *Causbie Gullers v. Bejarano*, Case No. 06CV1659 JM (AJB), 2007 WL 9771356, at *4 (S.D. Cal. Jan. 8, 2007), *aff'd in part and remanded on other grounds*, 293 Fed. App'x. 488 (9th Cir. 208) (rejecting the fugitive's argument regarding a lack of dual criminality "because a successful fraud prosecution in the United States requires proof of specific intent to deceive, whereas such proof is not required for a criminal fraud conviction under Mexican law.").

Here, Ms. Sridej argues that the elements of the crime with which she is charged in Thailand does not require an intent to deceive while the law in Nevada pertaining to grand larceny, on which the government relies, does require intent. Ms. Sridej also argues to the extent the government also relies on bank fraud and wire fraud statutes, they too require a defendant to have acted with intent. Ms. Sridej relies on *Manta v. Chertoff*, 518 F.3d 1134, 1142 (9th Cir. 2008) for the contention that it is proper for the Court to consider her "intent" when conducting a dual criminality analysis. While the Court in *Manta* found considering alleged intent as part of its dual criminality analysis was proper, the Court rejected the fugitive's argument that "the government did not prove dual criminality because it failed to establish specific intent to defraud." *Id*. (internal quote marks omitted). The court stated that "[a]n intent to defraud may be inferred from circumstantial evidence[,

and] we can easily infer … [the fugitive's] intent to defraud from the alleged conduct on which Greece based" two charges. *Id*.

Thailand charges Ms. Sridej with 36 counts of jointly committing the offense of fraud under Sections 341, 83, and 91 of the Thai Penal Code. Gov't Ex. 2 (Request for Extradition) at 1. The substantive fraud statute at issue is Section 341. This statute states, in pertinent part, "Whoever dishonestly deceives another person by expressing with a false statement or by suppressing true facts that should be revealed, and, by such deception, obtains any property from the person so deceived or a third person; or causes such person so deceived or a third person to execute, revoke or destroy a Document of Right is said to commit the offence of fraud …." *Id*. at 6. Public Prosecutor Julniti's Affidavit details numerous acts in which Ms. Sridej is alleged to have participated that includes dishonestly deceiving VSC through false statements. Gov't Ex. 2 (Julniti Aff.) at 6-46. The allegations in the Public Prosecutor's Affidavit detail facts demonstrating Ms. Sridej (1) participated in a scheme to steal electronic products on 36 occasions worth approximately $4 million U.S dollars, (2) participated in creation of documents intended to appear VSC was sending products to one company when the products were delivered to a co-conspirator, and (3) intended to and did dishonestly communicate and instruct subordinates to record transactions that were not as reported on VSC documents. Gov't Ex. 2 (Julniti Aff.). The conduct enumerated by Julniti supports the finding that had the conduct alleged occurred in Nevada, it would be prosecutable—sufficient to support criminality under NRS 205.220, the Nevada grand larceny statute on which the government relied. ECF No. 19 to which the government cites in its Post-Hearing Supplemental Brief (ECF No. 33 at 7).[1] As was true in *Manta*, Ms. Sridej's intent is easily inferred from the authenticated, circumstantial evidence presented by the Public Prosecutor on which the Court is permitted to rely. *Manta*, 518 F.3d at 1142; 18 U.S.C. § 3190. Moreover, the Court notes, under *Emami*, *Fordham*, *Spatola*, *Trifonov*, and *Causbie Gullers*, a finding of dual criminality does not require equivalent mens rea.

---

[1] The intent element Ms. Sridej argues is equally applicable to a federal wire and bank fraud charge is met through the same analysis.

Accordingly, the Extradition Treaty covers the 36 offenses for which Thailand seeks Ms. Sridej's extradition. The offenses are extraditable offenses.

C. **The Evidence Submitted by Thailand Through Authenticated Documents Supports a Finding of Probable Cause**.

To certify Ms. Sridej is extraditable, the Court must determine there is probable cause to believe she committed the crimes with which she is charged. *Matter of Extradition of Ameen*, Case No. 2:18-mj-152-EFB, 2021 WL 1564520, at *9 (E.D. Cal. Apr. 21, 2021) (citing *Santos*, 830 F.3d at 991). Evidence is sufficient and probable cause is established if, considered in the context of a preliminary hearing, "whether a case is made out which will justify the holding of the accused … to ultimately answer" at trial. *Benson v. McMahon*, 127 U.S. 457, 468 (1888); *see also Collins v. Loisel*, 259 U.S. 309, 316 (1922) ("The function of the committing magistrate [judge] is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.").

Probable cause is generally defined as "sufficient evidence to convince a person 'of prudence and caution' that a crime was committed and that the accused committed it." *Ameen*, 2021 WL 1564520, at *13 (citing *Carroll v. United States*, 267 U.S. 132, 160-61 (1925) and *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). Further, a determination of probable cause is properly based solely on a foreign prosecutor's statements, including hearsay and other evidence. *Manta*, 518 F.3d at 1139-40. *See also Emami*, 834 F.2d at 1450–51 (hearsay statements summarized in the foreign prosecutor's affidavit in support of extradition was properly authenticated and competent evidence under United States extradition law); *Then*, 92 F.3d at 855 (upholding a Magistrate Judge's finding of probable cause to certify extradition on the strength of two affidavits, one supporting an inference that the fugitive knowingly participated in a bill of exchange fraud, and the second from an inspector describing an admission of an agreement to share proceeds of the fraud and an explanation of the accused's role in the fraud from an individual connected to the crimes for which the extradition was sought).

Here, while Ms. Sridej challenges the Public Prosecutor's affidavit through a claim that it includes hearsay within hearsay, she does not point to any provision or factual allegation in the

affidavit with which she takes issue. Nor does Ms. Sridej challenge the authenticity of the affidavits submitted in support of probable cause, which are admissible and on which the Court may rely. While the Julniti Affidavit offers hearsay, the information offered is detailed, specifying to dates, actions, and results in which Ms. Sridej participated. Gov't Ex. 2 (Julniti Aff.) at 6-46. Importantly, the allegations against Ms. Sridej are further supported by the Affidavit of Nathanan Thanthada, the deputy director of debt collections for VSC. Gov't Ex. 2 (Thanthada Aff.) ¶¶ 7-9. Together these affidavits are sufficient evidence to convince a person of prudence and caution that crimes were committed and Ms. Sridej committed these crimes.

Accordingly, the information presented to the Court is competent evidence to establish probable cause that Ms. Sridej committed the crimes with which she is charged.

D. <u>The Due Process Issues Raised by Ms. Sridej Must be Decided by the Secretary of State</u>.

Ms. Sridej raises a number of due process concerns that may arise from her extradition. Whether the undersigned finds these compelling is of no moment as the issues raised must be brought to the attention of the Secretary of State, not this Court. The Court's exercise of authority clearly does not include consideration of Ms. Sridej's substantive or procedural due process concerns. *Prasoprat*, 421 F.3d at 1016; *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012) cert. denied 568 U.S. 1114 (2013); *In re Kaine*, 55 U.S. 103, 110 (1852).

E. <u>Ms. Sridej's Request for a Stay of Extradition is Denied</u>.

The Court finds that Ms. Sridej's request for a stay is not properly before this Court. Rather, a review of the case law shows that Ms. Sridej should bring this issue through a habeas corpus petition. *See Wroclawski v. U.S.*, Case No. CV 09-0977-PHX-MHM (DKD), 2009 WL 1407304 (D. Ariz. May 20, 2009) (18 U.S.C. § 3188 "automatically tolls the Certificate during the pendency of Petitioner's habeas corpus proceeding") (internal citation omitted); *Matter of Extradition of Prokop*, Case No. MJ20-154-BAT, 2020 WL 6076899, at *1 (W.D. Wash. Oct. 15, 2020) ("the only available avenue to challenge the Court's certification is through a habeas petition").

Assuming, however, that Ms. Sridej seeks a stay of certification pending the filing of a habeas petition, the Court considers "(1) whether the stay applicant has made a strong showing that he is

likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; and (3) where the public interest lies." *Matter of Knotek*, Case No. LA CV 13-9204 BRO (JCG), 2016 WL 4726537, at *7 (C.D. Cal. Sept. 8, 2016). A stay is not a matter of right, but an exercise of judicial discretion, highly dependent on the facts of the particular case at hand. *NikenF.Supp v. Holder*, 556 U.S. 418, 433 (2009) (internal citations omitted). The party requesting a stay must prove that her individual circumstances justify an exercise of that discretion. *Id.* at 433-34. Here, the circumstances do not justify a stay.

Ms. Sridej's argument in favor of a stay returns to the issue of the validity of the Extradition Treaty. The Court finds that overwhelming evidence and law demonstrate the Extradition Treaty between the U.S and Thailand remains in full force and effect. Ms. Sridej next argues that the difference in stated elements of the crime of fraud (the lack of intent stated in Thai law) demonstrates the offense is not one for which she can be extradited. The Court disagrees as explained in detail above. Ms. Sridej argues due process and humanitarian issues, with which the Court might sympathize, but are not issues this Court is authorized to consider. These issues must be addressed with the Secretary of State. A lack of probable cause is argued by Ms. Sridej, but the affidavits of the Public Prosecutor, as well as the deputy director of debt collection for VSC, offers more than sufficient evidence to support the probable cause finding. In sum, Ms. Sridej does not make a strong showing of success on the merits.

With respect to irreparable harm, this is a repeat of Ms. Sridej's humanitarian and due process concerns that are not issues the Court considers when deciding whether to issue a certificate of extradition. At the risk of redundancy it is the Secretary of State who has broad discretion to consider these issues and decide, for any number of reasons, that extradition is not proper. *Prasoprat*, 421 F.3d at 1016. If humanitarian issues were properly considered on a stay by the Magistrate Judge, whose role is limited, the rule on a stay petition would negate the black letter law applicable to the decision on extradition. Further, Plaintiff may proceed and argue due process and humanitarian issues through a habeas petition or before the Secretary of State.

Having found the Extradition Treaty is in full force and effect, the crimes with which Ms. Sridej are charged is extraditable, and there is probable cause for each such charge, the public interest lies with denying the stay.

### III.     Certification and Committal for Extradition

Having held an extradition hearing on November 30, 2022, and after considering the evidence, in particular, the authenticated documents submitted by the Kingdom of Thailand and the pleadings and arguments of counsel, the Court finds and certifies to the Secretary of State as follows:

1.     The Court has jurisdiction over, and the undersigned is authorized to conduct, extradition proceedings pursuant to Title 18 U.S.C. § 3184;

2.     This Court has personal jurisdiction over Sumontinee Sridej, aka Sumontinee Wongkaew, aka Sumontinee Hughes, found and arrested on October 11, 2022, in the District of Nevada pursuant to a complaint filed by the United States in response to the request of Thailand for the arrest and extradition of the fugitive;

3.     The Extradition Treaty between the United States and Thailand was in full force and effect at all times relevant to this action;

4.     Ms. Sridej sought by Thai authorities arrested in this District with a view toward extradition and brought before this Court are one and the same person (*see* ECF No. 32 at 27-29);

5.     The fugitive is accused in Thailand of 36 counts of jointly committing the offense of fraud pursuant to Sections 341, 83 and 91 of the Thai Penal Code. Thailand has jurisdiction over this criminal conduct;

6.     The Extradition Treaty, pursuant to Article 2, encompasses the offenses with which Ms. Sridej was accused and for which extradition is sought;

7.     Thailand submitted documents that were properly authenticated in accordance with Article 9(6) of the Extradition Treaty. Those documents include the pertinent text of the offenses for which extradition is sought;

8.     Probable cause exists to believe that Ms. Sridej committed the offenses for which extradition is sought; and,

9. The evidence before this Court is sufficient to justify the fugitive's arrest and committal for trial had the alleged offenses occurred in the United States.

THEREFORE, pursuant to 18 U.S.C. § 3184, the above findings, the Court certifies the extradition of Sumontinee Sridej to Thailand on the 36 counts of jointly committing the offense of fraud pursuant to Sections 341, 83 and 91 of the Thai Penal Code, and commits Ms. Sridej to the custody of the United States Marshal pending further decision on extradition and surrender by the Secretary of State pursuant to 18 U.S.C. § 3186.

The Court further orders that the Clerk of Court to forward a certified copy of this Certification and Committal for Extradition, together with a copy of the evidence presented in this case, to the Secretary of State (to the attention of the Office of the Legal Adviser).

Dated this 6th day of January, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE